1

2

3

4

5

6

7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   RICHARD FELIX                          CASE NO. CV-F-05-1031 LJO

11              Plaintiff,                  **MEMORANDUM DECISION AND ORDER
                                            ON PLAINTIFF'S APPEAL FROM**
12        vs.                               **ADMINISTRATIVE DECISION** (Doc. 16)

13   JO ANNE BARNART,
     Commissioner of Social Security,
14
                Defendant.
15   _____/

16        Plaintiff Richard Felix ("claimant") seeks judicial review of an administrative decision denying

17   his claim for Disability Insurance Benefits under the Social Security Act, Title II ("Act").  Pursuant to

18   28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States

19   Magistrate Judge, and by a December 22, 2005 order, this action was assigned to United States

20   Magistrate Judge Lawrence J. O'Neill for all further proceedings.  Pending before the Court is claimant's

21   appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

22        Claimant filed his complaint on August 1, 2005 and his opening brief on April 13, 2006. The

23   Commissioner filed her opposition to the appeal on May 11, 2006. Claimant filed a reply brief on May

24   24, 2006.

25                           **BACKGROUND**

26                      **Administrative Proceedings**

27        Claimant filed an application for Disability Insurance Benefits under the Social Security Act on

28   January 8, 2000. (Administrative Record "AR" 86-89.)  He alleges a disability onset of June 21, 1999

1

1   due to severe sleep apnea. (AR 86, 97.) Claimant's application for benefits was denied and denied upon

2   reconsideration. Claimant's application was further denied by an Administrative Law Judge ("ALJ") in

3   a decision issued on March 28, 2002. (AR 9-19.) Claimant filed an action for judicial review before the

4   District Court. The parties agreed to remand the matter for further administrative proceedings. The

5   Appeals Council remanded the matter on July 14, 2003. (AR 418-419.) At a new administrative hearing,

6   the ALJ issued an unfavorable opinion on September 1, 2004. (AR 389-400.) The Appeals Council

7   denied review. (AR 373-375.) Claimant filed this action for judicial review pursuant to 42 U.S.C. §

8   405(g).

9   **Claimant's Background and Work Experience**

10   Claimant's past relevant work is as a truck driver. (AR 633.) Claimant completed the fourth

11   grade. (AR 634.) Claimant was born on July 21, 1956. (AR 635.)

12   **Medical History**

13   The pertinent medical history is summarized as follows.

14   In June 1999, claimant complained of chest pains and was evaluated by Rajib Choudhury, M.D.

15   (AR 142.) Claimant was assessed with morbid obesity (weight 309) with clinical history of sleep apnea

16   syndrome and atypical chest pain related to gastroesophageal reflux disease. (AR 143.) Dr. Choudhury

17   recommended a sleep study and treatment with antacids. (AR 143.) On November 22, 1999, he was

18   admitted into the hospital with hyperglycemis, ketosis, hypersomolar state secondary to diabetes type

19   2 and sleep apnea. (AR 144.) He was administered insulin and discharged in stable condition. (AR

20   144.) Chest X-rays were normal. (AR 180.)

21   Progress notes on November 12, 1999, Dr. Espinoza notes that the claimant has a CPAP and the

22   sleep apnea is better and he is newly diagnosed with diabetes. (AR 179). Progress notes on November

23   29, 1999, stated the diabetes is poorly controlled and insulin was started. The sleep apnea was stable.

24   (AR 178.) On December 17, 1999, the treatment record shows that claimant's diabetes was in good

25   control and sleep apnea was stable. He lost some weight to 288 lbs and was 63" tall. (AR 177.) Dr.

26   Espinosa gave claimant a temporary disability on September 1999 until October 18, 1999. (AR 188.)

27   A sleep study in February 2000 reported that claimant had a severe sleep apnea condition, but

28   had excellent response to nasal CPAP. (AR 268-272.)

On March 18, 2000, claimant presented for a comprehensive internal exam by Hae Young Aaron Song, M.D.  (AR 201-203.)  Claimant's chief complaints were sleep apnea and low back pain.  (AR 201.)  Claimant reported taking naps 2 times a day for 10-20 minutes.  (AR 201.)  Claimant reported low back pain after an accident with radiation down his legs and lying down and standing make it better.  (AR 201.)  He has not tried any pain medication for back pain and is very active at home.  (AR 201.)  On examination, Dr. Song found claimant had full range of motion and back pain did not have an impact on daily living.  Dr. Song functionally assessed claimant with no restrictions to standing, walking or sitting, and limited to 20 pounds lifting occasionally and 10 pounds frequently; occasional postural limitations secondary to claimant's morbid obesity and low back pain.  (AR 203.)  Dr. Song did not find any manipulative restrictions, but environmental restrictions of not operating cars or heavy machinery, working at unprotected heights, or performing duties that require full and alert attention at all times.  (AR 203.)

State Agency physician James Peery, M.D. completed the Physicial Residual Functional Capacity assessment form on April 11, 2000.  (AR 204-211.)  Dr. Peery agreed with Dr. Song on lifting restrictions and avoidance of hazards, and imposed postural restrictions of only occasional stair climbing and never scaffold or ladder climbing.  (AR 206.)  These findings were concurred with by state agency physician Wallace Campbell, M.D. on September 7, 2000. (AR 211.)

In April 2000, claimant reported having leg and arm numbness and dizziness. His physical examination was unremarkable. (AR 230-232.)  Dr. Espinosa gave claimant disability until May 24, 2000.  (AR 230.)

Claimant was seen by Barry Baron, M.D. for an otolaryngology consultation and examination on April 17, 2000.  (AR 495-500.)  Claimant complained of occasional day time fatigue and dizziness when lying down.  (AR 496.)  Dr. Baron suggested claimant should monitor his sleep apnea and lose weight.

On April 29, 2000, claimant was examined by Wilmore Finerman, Jr., M.D. for an internal medicine evaluation.  (AR 501-510.)  Claimant complained of day time sleepiness, and numbness in his arms and legs.  Dr. Finerman opined that claimant's sleep apnea was due to his obesity and that he was not disabled on an industrial basis.  (AR 506.)

1    Dr. Espinosa referred claimant to Wilbur Suesberry, M.D. on June 7, 2000 for an ears, nose and

2    throat examination.  (AR 220-221.)  Claimant reported sleep apnea, was wearing a CPAP and mild

3    frontal headaches.  (AR 220.)  Dr. Suesberry recommended against a tonsillectomy due to the risk to

4    claimant related to his obesity. (AR 221.)  Dr. Suesberry recommended continued use of the CPAP and

5    a diet for weight loss.

6    In June and July 2000, claimant returned to Dr. Espinosa; his lungs were clear, his heart was

7    regular, and he had no edema. He had elevated SED rates which could not be explained, and

8    reported severe fatigue. (AR 260-264.)  In July 2000, claimant saw Boot S. Chahill, M.D., for arm and

9    hand numbness. Dr. Cahill found evidence of mild carpal tunnel syndrome and no evidence of cervical

10   radiculopathy. The physical examination was normal. The arm numbness was attributed to neuropathy,

11   or possibly carpal tunnel syndrome. (AR 325-329.)  Claimant was referred to Dr. Lim, who reported

12   claimant was obese, but his physical was normal and, he had no significant complaints. Dr. Lim

13   prescribed an anti-inflammatory for the elevated SED level. (AR 256-259.)

14   On October 6 and 20, 2000, claimant saw Robert Tevendale, M.D.  for obesity, sleep apnea and

15   diabetes. (AR 240, 244.)  Claimant reported that his sleep apnea was not better with the CPAP.  Dr.

16   Tevendale assessed obesity, and sleep apnea, diabetes-diet controlled and back pain. Dr. Tevendale

17   recommended claimant lose weight to help with back pain and that he did not have evidence of

18   radiculopathy.  (AR 240.)

19   In October 2000, Dr. Tevendale completed a medical source statement in which he opined that

20   claimant could lift no more than ten pounds, stand or walk two to four hours, and sit without restrictions.

21   He assessed postural restrictions due to obesity and noted that claimant was restricted from performing

22   work around dangerous equipment.  He noted that claimant was not in pain. (AR 354-357.)

23   In January 2001, claimant returned to Dr. Tevendale with complaints of dizziness and chest pain

24   and was prescribed medication.  (AR 315.) In February 2001, Dr. Tevendale adjusted his medications

25   to correct shakiness and trembling from blood sugars.  (AR 311.)  In April, claimant was not taking his

26   medications, his diabetes was uncontrolled and Dr. Tevendale recommended diet for control.  (AR 306.)

27   In March 2001, he saw Dr. Michael Bronshvag, M.D., in conjunction with his workers

28   compensation claim (TR 545-549). Claimant complained of back pain.  Dr. Bronshvag recommended

4

an orthopedic and ears, nose and throat consultation. (AR 548.) Dr. Bronshvag made another assessment in 2002.  He opined that the claimant has sleep apnea, obesity and diabetes. (AR 523-525.)  On October 16, 2002, Dr. Bronshvag determined that the claimant was Temporarily Totally Disabled from 1999 to the summer of 2002. (AR 514.)

On April 4, 2001, claimant had a chest test which showed mild dextroscoliosis but no significant chest abnormality.  (AR 320.)

In May 2001, he was seen by Karen Guenette, M.D. with complaints of chest pain, right arm numbness and occasional feet swelling. (AR 299-300.)  He also reported chest pain had resolved using an antacid, but his diabetes remained uncontrolled.  (AR 352.)  In May 2001, an x-ray of claimant's cervical and lumbar spine showed some early degenerative changes with a suspected moderate to moderately severe component of disc disease. (AR 353.)

In October 2001, claimant was diagnosed with mild carpal tunnel syndrome.  (AR 372.)

On December 21, 2001, Dr. Falappino at Family HealthCare Network made an assessment of (1) anxiety, (2) chronic elevated sed rate, and (3) sleep apnea by history. (AR 368).  In January 2002, claimant reported that his CPAP was not working and a new sleep study was recommended.  (AR 366.)

In June 2003, claimant saw Charles Tam, M.D. for a cardiology and internal medicine evaluation. (AR 554-559.)  Dr. Tam stated that claimant had obstructive sleep apnea syndrome and the CPAP machine is helpful.  Dr. Tam opined that the sleep apnea would preclude him from being a long distance truck driver, but that claimant is not disabled for many other occupations.  (AR 558.)

In July 2003, claimant's diabetes was uncontrolled and he complained of severe depression, anxiety and fatigue.  (AR 446, 481).  He was recommended to follow a low fat, low cholesterol diet. (AR 446, 481.)  In July 2003, claimant reported he had not been taking his diabetes medication for six months.  (AR 449.)  He was prescribed insulin.  (AR 476-478.)  In September 2003, claimant reported depression among other complaints.  (AR 466.)

In December 2003, Antonio Sanchez, M.D. noted claimant to be poorly compliant with weight loss.  (AR 461.)

Claimant saw a consultant at Behavior Health Consultation (AR 486-490) for his mental state. The claimant continued to be treated at Family HealthCare Network from August 25, 2003 to June 14,

1   2004. (AR 460-490 and 560-585.)

2       On March 19, 2004, claimant presented for a Psychiatric Evaluation by Michael Barnett, M.D.

3   (AR 491-493.) He complained of a loss of concentration and panic attacks three or four times a week.

4   He said he had stopped his medications as a way to kill himself, but later went back to his doctors.  Dr.

5   Barnett, in a CE psychiatric report diagnosed depressive disorder NOS, psychotic disorder NOS and

6   panic attacks with agoraphobia, and a GAF of 54. (AR 492.) Dr. Barnett functionally assessed claimant:

7           "The claimant would have difficulty being able to sustain focused
            attention and concentration long enough to complete routine work-related
8           tasks in a timely and appropriate way and would need special or
            additional supervision to do so. The claimant would have difficulty being
9           able to interact independently, appropriately and effectively with
            coworkers, supervisors and the public. The claimant would have
10          difficulty adapting to changes, hazards or stressors in the work
            environment." (AR 493.)

11

12                                      **Hearing Testimony**

13      Claimant testified that he completed 2 semesters of community college.  (AR 591.)  He was a

14  truck driver, but last held a position as a janitor for 3 weeks.  (AR 591.)  He was let go because he had

15  to sit a lot due to shortness of breath.  (AR 592.)  He quit driving trucks due to sleep apnea.  (AR 592.)

16  He had three accidents and his license was taken away.  (AR 592.)  He is 5'3" and weights 352 pounds.

17   (AR 593.) A sleep study recommended C-Pap which he uses but does not give him a restful sleep.  (AR

18  593.) He uses oxygen.  (AR 594.) He has trouble staying awake.  (AR 594.) He cannot concentrate and

19  has anxiety.  (AR 595.) He cannot lift anything below his waist because of his stomach and back.  (AR

20  596.) He has carpal tunnel in both hands and he drops things.  (AR 596.) He can lift 20 pounds, but not

21  repetitively.  (AR 596.) He is also a diabetic.  (AR 597.) He is on insulin.  His feet swell and he can

22  only walk about 20-30 yards.  (AR 599.) He can stand for a couple of hours out of a day, sit for an hour

23  but has to lay down.  (AR 600.) He lays down 10 times a day for about 30 minutes each time.  (AR 601.)

24  He is tired all of the time.  (AR 601.) He testified that he always watches his diet and tries to exercise.

25  (AR 604.)  His sister moved in with him to help his wife and to watch him because he has suicidal

26  thoughts sometimes.  (AR 609.)

27      Claimant's sister Regina Renteria testified.  (AR 610.)  She lived in his house for about a year,

28  and before that checked on him daily.  (AR 612-613.)   She moved in because she was afraid for him;

                                              6

1    that way he did not breathe.  She saw him drowsy all the time; he would get confused; saw him

2    depressed.  (AR 615.)  He also complains of pain in his back and hands.  (AR 617.)  She feels he is

3    getting worse over the years.  (AR 619.)  She testified that the doctor told claimant to watch his diet, and

4    they try to do so.  (AR 621.)

5        On remand, claimant testified that he helps his wife with the day care business by helping pick

6    up things.  (AR 635.)  He does not do anything and mostly sits.  (AR 636.)  He'll watch a movie with

7    his children.  If he goes somewhere, he just sits.  (AR 638.)  His weight is a problem.  (AR 638.)  His

8    weight is 370 pounds.  (AR 639.)

9        Vocational expert ("VE") Cheryl Chandler testified.  (AR 639.)  She testified that truck driving

10   is semi-skilled and heavy work.  (AR 640.)  A job as a janitor is semiskilled and medium exertional

11   level. (AR 641.)  The VE was given a first hypothetical: a claimant with high school education and

12   functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand/walk/sit 6

13   hours in 8, but must avoid heights, dangerous moving equipment, can occasionally stoop, kneel, crawl,

14   couch and climb.  (AR 641-642.)  The VE testified that claimant could not perform his past relevant

15   work but could perform the full range of unskilled light work.  (AR 642.)  Unskilled, light work included

16   food preparation jobs, 27,000, farm work of 20,000.  (AR 642.)  The second hypothetical changed that

17   claimant could sit one hour total, stand two hours total, walk 20-30 yards total, must lie down for 2 times

18   per day for 30 minutes; difficulty gripping and grasping; could understand and remember simple

19   instructions; unable to sustain focused attention and concentration; need special supervision, among

20   other limitations.  (AR 643.)  The VE testified that there would be no jobs claimant could perform

21   locally or nationally.  (AR 643.)  The VE testified that the nonexertional, mental, limitation preclude

22   work.

23                                   **ALJ Findings**

24       In his September 1, 2004 decision, the ALJ characterized the "primary issue" before him as

25   whether claimant was disabled.  (AR 392.)  In determining claimant was not disabled and not eligible

26   for disability benefits, the ALJ made the following findings (AR 300-400):

27   1.      The claimant meets the insured status requirements for a period of disability and

28           Disability Insurance Benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's diabetes mellitus, obesity, and sleep apnea are considered "severe" based on the requirements in the Regulations 20 CFR §404.1520( c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations regarding his limitations are not credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to occasionally lift up to 20 pounds, frequently lift and carry up to 10 pounds, and sit, stand, or walk for 6 hours in an 8-hour day.  He is able to only occasionally climb, stoop, crouch, kneel, and crawl.  The claimant must avoid working at unprotected heights or around dangerous moving machinery.

7. The claimant is unable to perform his past relevant work as a truck driver.  20 CFR §404.1565.

8. The claimant was 42 years old on the alleged onset and is currently 48 years old.  He is defined as a younger individual.  20 CFR §404.1563.

9. The claimant has a high school education.  20 CFR §1564.

10. The claimant's work skills are not transferable to jobs within his residual functional capacity.  20 CFR §404.1568.

11. The claimant has the residual functional capacity to perform a significant range of light work.  20 CFR §404.1567.

12. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as a cashier, 94,000 jobs available in California, and 949 available nationally; miscellaneous food preparation, 27,000 jobs available in California and 270,000 available nationally; and farm worker, 20,000 jobs

1    available in California and 200, available nationally.

2    13.   The claimant was not under a disability, as defined in the Social Security Act, at any time

3    through the date of this decision. 20 CFR §404.1520(g).

### DISCUSSION

### Standard of Review

6    Congress has provided a limited scope of judicial review of a Commissioner's decision.  *See* 42

7    U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the

8    determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*,

9    760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510

10   (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating

11   physician's findings).  Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402

12   U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119,

13   n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as

14   adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.

15   The record as a whole must be considered, weighing both the evidence that supports and detracts

16   from the Commissioner's conclusion.  *Jones,* 760 F.2d at 995.  If there is substantial evidence to support

17   the administrative findings, or if there is conflicting evidence that will support a finding of either

18   disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d

19   1226, 1229-1230 (9th Cir. 1987).

20   Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

21   determine whether it is:  (1) based on proper legal standards; and (2) supported by substantial evidence

22   in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

23   Claimant contends the ALJ's erred as follows: (1) failed to adopt the opinion of the treating

24   physician Dr. Tevendale, (2) failed to adopt the limitations imposed by the psychiatric consultative

25   examiner, Dr. Barnett, (3) failed to accept the statement of Dr. Bronshvag that claimant was disabled,

26   (4) failing to give adequate reasons for rejecting witness testimony, (5) failed to find back pain and upper

27   extremity pain severe, (6) failed to assess the effects of obesity and in particular sleep apnea, (7) failed

28   to find claimant credible.

### The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382a(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled.  20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further.  20 C.F.R. §§ 404.1520(a) and 416.920(a).  The five-step process is summarized as follows:

1.      Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2.      If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3.      If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4.      If the claimant's impairment is not listed, determination of whether the impairment prevents the claimant from performing his or her past work;[3]  if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5.      If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful

---

[1]      *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2]      If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

[3]      At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity.  *Villa v. Heckler*, 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

10

1    work that exist in the national economy;[4] if the claimant can, the claimant is not disabled

2    and the analysis ends.

3    The claimant has the initial burden of proving the existence of a disability within the meaning

4    of the Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  The claimant establishes a prima

5    facie case of disability by showing that a physical or mental impairment prevents him from engaging in

6    his previous occupation.  *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§

7    404.1520(f) and 416.920(f).

8    In this case, claimant convinced the ALJ that he met the criteria in step one of the sequential

9    analysis; that he has not been engaged in substantial gainful employment.

10    At step two, the ALJ must determine if the impairment is severe.  The ALJ determined that the

11    medical evidence establishes severe impairments of diabetes mellitus, obesity and sleep apnea, but that

12    the impairments did not meet the Listings.  (AR 393.)

13    ### The ALJ's Finding of Residual Functional Capacity

14    The Commissioner has final responsibility to determine a claimant's residual functional capacity.

15    20 C.F.R. § 404.1546.  "Residual functional capacity" is the phrase used by the Commissioner to denote

16    a claimant's ability to perform work-related tasks despite his physical or mental impairments.  20 C.F.R.

17    §§ 404.1545(a) and 416.945(a).  Categories of residual functional capacity include sedentary, light,

18    medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.  In this case, the ALJ found

19    claimant capable of performing light work. "Light work" is defined as follows:

20
21
22
23
> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

24
25    20 C.F.R. §§ 404.1567(b) and 416.967(b).

26    Claimant argues that there is not substantial evidence to support the finding of residual functional

27    _____

28    [4]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

1    capacity and that the ALJ erred in rejecting the treating doctor's opinions, Dr. Tevendale.

2         Generally, more weight should be given to the opinion of a treating source than to the opinion

3    of doctors who do not treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Winans v.*

4    *Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  However, a treating physician's opinion is not conclusive as

5    to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ

6    even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriguez v. Bowen*, 876 F.2d 759, 761-762,

7    n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and

8    ambiguities in treating physician's opinion concerning level of disability sustained by social security

9    claimant, were specific and legitimate reasons for not accepting physician's opinion.)

10        The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the

11   treating physician's opinion:

12            The ALJ may disregard the treating physician's opinion, but only by
             setting forth "specific, legitimate reasons for doing so, and this decision
13            must itself be based on substantial evidence." *Cotton v. Bowen*, 799 F.2d
             1403, 1408 (9th Cir. 1986).  This burden can be met by providing a
14            detailed summary of the facts and conflicting clinical evidence, along
             with a reasoned interpretation thereof.  *Id.*  Furthermore, the ALJ's
15            reasons for rejecting the doctor's opinion must be "clear and convincing.

16   *Rodriquez,* 876 F.2d at 762.

17        The ALJ gave a detailed summary of the facts and conflicting clinical evidence.  (AR 394-397.)

18   The ALJ reviewed all of the objective medical evidence in the Record, including the records from the

19   Sierra View District Hospital, Dr. Espinosa, Family HealthCare, Sequoia Medical Center, and the

20   various doctors. The ALJ rejected Dr. Tevendale's October 2000 statement:

21            "Although Dr. Tevendale is a treating physician, his assessment is not
             supported by objective evidence that the claimant would be able to walk
22            or stand less than 6 hours; the claimant is undoubtedly obese, but does
             not have cardiac or pulmonary problems, or limitation of lower extremity
23            strength, which would restrict walking or standing."  (AR 396.)

24   The ALJ did not accept the opinion because "it is inconsistent with the objective findings." (AR 396.)

25        The ALJ relied upon the opinion of the two the state agency physicians and of the opinion of the

26   consultative examiner Dr. Song.

27   On examination, Dr. Song found claimant had full range of motion and back pain did not have an impact

28   on daily living.  Dr. Song functionally assessed claimant with no restrictions to standing, walking or

1    sitting, and limited to 20 pounds lifting occasionally and 10 pounds frequently; occasion postural

2    limitations secondary to claimant's morbid obesity and low back pain. (AR 203.) Dr. Song did not find

3    any manipulative restrictions, but environmental restrictions of not operating cars or heavy machinery,

4    working at unprotected heights, or performing duties that require full and alert attention at all times.

5    (AR 203.)

6          The ALJ also gave substantial weight to the opinions of the state agency analyst and reviewed

7    medical consultant who affirmed that the claimant could perform light exertion, with hazard precautions.

8    (AR 397) (evidence citations omitted.)  State agency medical consultants are highly qualified physicians

9    who are experts in the evaluation of the medical issues in disability claims under the Act.  *See* Social

10   Security Ruling 96-6p.  The opinion of a reviewing physician and the ALJ's conducting an independent

11   analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777,

12   779 (8th Cir. 1995).

13         Where the opinion of the claimant's treating physician is contradicted, and the opinion of a

14   nontreating source is based on independent clinical findings that differ from those of the treating

15   physician, the opinion of the nontreating source may itself be substantial evidence.  *Tonapetyan v.*

16   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could

17   lift and carry 20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant

18   could perform medium work, where examining physician's opinion was based on results of "his own

19   independent examination"); *Allen v. Heckler,* 749 F.2d 577, 579 (9th Cir.1984) (holding where

20   examining physician offered opinion, based on "his own neurological examination," that claimant could

21   perform sedentary work, while treating physician opined that claimant was totally disabled, ALJ's

22   finding that claimant could perform sedentary work was supported by "substantial evidence").  Thus,

23   there is substantial evidence in the Record to support the ALJ's decision.

### Psychiatric Consultative Examiner, Dr. Barnett

25         Claimant argues that the ALJ erred in failing to adopt the psychiatric limitations assessed by the

26   consultative examiner Dr. Barnett.

27         In this case, consultative psychiatric examiner Dr. Barnett assessed claimant as unable to sustain

28   focused attention and concentration to complete work-related tasks, require special supervision,

1  difficulty in interacting independently and adapting to changes, hazards or stressors in the work

2  environment.

3       The ALJ did not adopt all of Dr. Barnett's limitations.  "Weight is given to the consultative

4  psychiatric evaluation, in so far as it shows that the claimant does not have diminished cognitive

5  abilities."  (AR 397.)  The ALJ stated the portion of the opinion rejected:

6           "However, no weight is given to the examiner's conclusion that the
             claimant would have difficulty maintaining concentration for two hours,
7           or focus through an 8-hour day."  (AR 397.)

8  He then gave his reasons for rejecting the opinion of Dr. Barnett as to the limitations:

9           "The treating record does not show that the claimant had symptoms of
             paranoia or auditory hallucinations, or that he was referred for mental
10          health treatment or counseling; further, the extensive Worker's
             Compensation evaluations do not show pronounced psychological signs
11          and symptoms.  Dr. Barnett's evaluation reflects an uncritical acceptance
             of the claimant's self-reported psychiatric symptoms."  (AR 397.)
12

13  20 C.F.R. §416.927(d)(4) ("the more consistent an opinion is with the record as a whole, the more

14  weight we will give to that opinion."); *see also*, *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

15  ("To the extent that the nontreating physician's opinion rests on objective clinical tests, it must be viewed

16  as substantial evidence.")

17       The ALJ then compared the objective record with the claimant's statements to Dr. Barnett:

18          "[H]owever some of the claimant's statements at the evaluation were
             contradicted by other evidence.  The claimant told Dr. Barnett he had not
19          worked since June 1999, but in fact attempted to work in 2003; he alleged
             illiteracy in spite of graduating from high school, but also attended junior
20          college and had a commercial driver's license, which requires literacy.
             The claimant also indicated that he seldom left home, did not shop, or
21          visit anyone, but his testimony indicated that he visited family and kept
             doctor's appointments."  (AR 397.)
22

23  Thus, the ALJ found that claimant's poor credibility undermined Dr. Barnett's limitations which relied

24  upon claimant's subjective complaints.  A physician's opinion of disability "premised to a large extent

25  upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those

26  complaints have been "properly discounted."  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (citing

27  *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433-434 (9th Cir. 1988)).  When a

28  plaintiff's conduct undermines his credibility, "it is reasonable to question the reliability of a physician's

14

opinion based on [plaintiff's] complaints." *Brawner*, 839 F.2d at 434.  The ALJ reasonably rejected Dr. Barnett's limitations due to its unreliable evidentiary support.  The Court does not find error.  It is clear from these findings that the ALJ analyzed the records and medical opinions.

It is for the Commissioner to resolve conflicting evidence.  *Sanchez v. Secretary of HHS*, 812 F.2d 509, 511 (9th Cir. 1987); *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.).

### Statement of Dr. Bronshvag that Claimant was Disabled

Claimant argues that the ALJ erred in rejecting the opinion of Dr. Bronshvag that the claimant was temporarily totally disabled from July 1999 to August 2002.

The ALJ partially accepted the opinion of Dr. Bronshvag: "Weight is also given to Dr. Bronshvag's examinations in 2001 and 2002, as to his August 2002 that the claimant was precluded from heavy work, as well as from truck driving." (AR 396.)  The ALJ rejected the portion of the opinion in which Dr. Bronshvag's "statement that the claimant was temporarily totally disabled from July 1999 to August 2002 is disregarded, since it was given in terms of the claimant's past work; further Dr. Bronshvag did not examine the claimant before March 2001." (AR 396) (Evidence citations omitted.)

The ALJ rejected Dr. Bronshvag's opinion for two independent reasons.  The first reason was that Dr. Bronshvag was speaking in terms of claimant's past work as a truck driver. Claimant agrees he cannot perform his past work, and does not attack the ALJ for rejecting the opinion on this reason. Indeed, Dr. Bronshvag's opinion is limited to claimant's inability to operate a motor vehicle.  (See AR 517, 548.)  The ALJ interpreted this limitation in terms of claimant's past work and not as a limitation on all work.  *See Morgan v. Commissioner of the Soc. Sec. Admin.*, 169 F.3d 595, 601, 603 (9th Cir.1999) (Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of physicians falls within this responsibility.)  The ALJ is entitled to draw inferences logically flowing from the evidence in the proceedings before him.  *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996).  The ALJ drew the logical inference that Dr. Bronshvag limited claimant only from his past work and not from the entire world of work.

1   The Court finds the ALJ's first stated reason is legally sufficient to partially reject Dr.

2   Bronshvag's opinion.

3                              **Failed to Find Claimant Credible**

4       Claimant argues that the ALJ failed to offer clear and convincing reasons to reject his subjective

5   testimony regarding his pain and symptoms.

6       A claimant's credibility generally becomes important at the stage where the ALJ is assessing

7   residual functional capacity, because the claimant's subjective pain statements may tell of greater

8   limitations than can medical evidence alone. Social Security Rule (SSR) 96-7p (1996); *Tonapetyan v.*

9   *Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's

10  statements regarding his limitations merely because they are not supported by objective evidence. *Fair*

11  *v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989).  In assessing the claimant's credibility, the ALJ may use

12  "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for

13  truthfulness and any inconsistent statements in her testimony. *Tonapetyan v. Halter*, 242 F.3d at 1148.

14  The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements. *Fair*

15  *v. Bowen*, 885 F.2d at 602; *Tonapetyan v. Halter*, 242 F.3d at 1148.  An ALJ may consider the following

16  factors to determine the credibility of a claimant's allegations:

17       (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

18       (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental

19  conditions);

20       (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

21       (4)    Treatment, other than medication, for relief of pain;

22       (5)    Functional restrictions;

23       (6)    Claimant's daily activities;

24       (7)    Unexplained, or inadequately explained, failure to seek treatment or follow up a

25  prescribed course of treatment; and

26       (8)    Ordinary techniques to test a claimant's credibility.

27  *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

28       The ALJ partially accepted claimant's subjective complaints: the ALJ found claimant had severe

                                          16

1    sleep apnea and obesity, among other things.

2         The ALJ considered ordinary techniques of credibility in rejecting claimant's full complaints of

3    debilitating pain and symptoms. The ALJ stated that claimant's impairments can reasonably be expected

4    to produce some of the pain and symptoms alleged, but the ALJ concluded that the alleged pain was not

5    fully supported: "[T]he Administrative Law Judge finds that the claimant's impairments are not as

6    limiting as he alleges." (AR 398.)

7         The ALJ relied upon the medical evidence in the record. "The claimant's testimony that his

8    CPAP is ineffective is contradicted by the February 2000 sleep study. This showed that he had good

9    results with CPAP, at 9 cm of oxygen." (AR 398) (Evidence citations omitted.) The ALJ noted the

10   "mild" nature of the carpal tunnel: "Although a diagnosis of mild carpal tunnel syndrome is supported

11   by objective evidence, the multiple QMEs in 2000, 2001, 2002 and 2003, did not observe loss if grip

12   strength or neurological deficits in the claimant's wrists and hands." (AR 398.) While subjective pain

13   testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical

14   evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain

15   and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

16        The ALJ compared the claimed limitations with claimant's functionality. "The claimant testified

17   to substantial limitations on his ability to walk and stand, but also that he did some yard work, picked

18   up around the house and tried to help with the kids." (AR 398.)

19        The ALJ noted several instances of what the ALJ considered to be inconsistent testimony:

20             "The claimant's credibility about his symptoms is lessened by several
               instances in the treating records showing his non-compliance with
21             diabetic medications and diet: in September 2000 he refused medications
               and would not stay on the diet; he did not keep medical appointments or
22             seek medical care from May 2002 until July 2003; in September and
               December 2003 he was noted to be non-compliant in spite of worsening
23             symptoms.  In February 2004 the claimant stopped taking insulin,
               although he had been prescribed it."  (AR 398) (Evidence citations
24             omitted.)

25   The need for infrequent or conservative treatment may refute allegations of disabling pain or

26   impairment. *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); *Moncada v. Chater*, 60 F.3d 521,

27   524 (9th Cir. 1995) (Failure to follow prescribed treatment is a proper basis for rejecting allegations of

28   disabling pain.).

1     Here, the ALJ considered numerous of the *Bunnell v. Sullivan*, factors for determining credibility.

2  "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d at 604.  Thus, there

3  is substantial evidence in the record to support the ALJ's rejection of plaintiff's subjective complaints.

4  *See Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may consider

5  inconsistencies between a claimant's testimony and statement from physicians about the nature, effect,

6  and severity of symptoms.); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir.

7  1995) (an ALJ may properly disregard a claimant's self-serving statements that were unsupported by the

8  medical evidence.)

9     Accordingly, the Court finds no error in the ALJ's evaluation of claimant's subjective complaint

10  testimony.

11     Claimant argues that the ALJ failed to adequately consider that the claimant's persistent efforts

12  to obtain pain relief enhances his credibility.

13     Here, the ALJ fully considered claimant's complete medical treatment record.  He considered

14  the mental impairment treatment, and his physical impairment treatment.  Thus, the ALJ adequately

15  considered the claimant's treatment efforts.

16                                      **Rejecting Witness Testimony**

17     Claimant argues that the ALJ did not give adequate reasons for rejecting the opinion of

18  claimant's sister, Regina.

19     The ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each

20  witness whose testimony he rejects. *Smolen v. Chater*, 80 F.3d 1273, 1288, 1292 (9th Cir. 1996) (finding

21  the ALJ's reasons for rejecting lay testimony insufficient and thus crediting the testimony).  Lay witness

22  testimony is "qualified evidence" that the ALJ must consider.  *See Sprague v. Bowen,* 812 F.2d 1226,

23  1231-32 (9th Cir.1987).

24     The ALJ summarized Regina's testimony as follows:

25          "She stated that the claimant was easily fatigued, became short of breath
            and confused, and had depression. Regina testified that the claimant was
26          unable to bend or stoop, did little yard work, very slowly and could not
            be left alone with the children because he fell asleep."  (AR 398.)

27

28  The ALJ rejected the sister's testimony as not credible "since it simply reiterates the claimant's

18

1  statements."  (AR 398.)

2      In the ALJ's decision, just prior to the ALJ's rejection of the sister's testimony, the ALJ analyzed

3  the claimant's subjective complaints.  The ALJ pointed to inconsistencies in claimant's testimony and

4  that the objective evidence was not supportive of his subjective complaints.  For instance, the ALJ noted

5  that the CPAP was effective, claimant's non-compliance with his medications and diet.  (AR 398.)  The

6  inference from the ALJ's rejection of the sister's testimony is that she repeated what the ALJ did not find

7  credible.  *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (the court may draw specific and

8  legitimate inferences from the ALJ's opinion).  The ALJ found that the sister's opinion was based on

9  claimant's subjective symptoms. *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir.1989) (disregarding a

10  physicians opinion because it was premised on subjective complaints, which the ALJ properly

11  discounted, constitutes specific, legitimate reason for rejecting the opinion of a treating physician).

12      Claimant argues that the sister reported things that she observed - fatigue, shortness of breath,

13  confusion.

14      The ALJ noted that claimant's lack of credibility as to the severity of his problems negatively

15  impacted the witness statements.  For the most part, these observations depended on claimant's reports

16  of his own pain, and thus, was properly rejected based on a negative credibility finding.  The finding of

17  disability must be based upon objective medical evidence and not upon lay witness testimony.  *See*, *e.g.*,

18  SSR 83-20 ("impact of lay evidence on the decision of onset will be limited to the degree it is not

19  contrary to the medical evidence of record.")  The Court finds no error.

20  **Back Pain and Upper Extremity Pain**

21      Claimant argues that the ALJ failed to adequately assess back pain and upper extremity

22  numbness as severe impairments.

23      The Social Security regulations define severe impairment as an impairment which significantly

24  limits a claimant's "ability to do basic work activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante*

25  *v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  "Basic work activities" are defined as including such

26  capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying

27  out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. §

28  404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20

C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6).  If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe.  *Bustamante v. Massanari*, 262 F.3d at 955.

The mere existence of an impairment is insufficient in and of itself to satisfy a showing that the impairment is so "severe" as to preclude substantial gainful employment.  *Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir.1982).  The step-two inquiry is a *de minimis* screening device to dispose of groundless claims.  *See Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996).  If the evidence presented by the claimant presents more than a "slight abnormality," the step-two requirement of "severe" is met, and the sequential evaluation process should continue.  *See Smolen v. Chater,* 80 F.3d at 1290.  Reasonable doubts on severity are to be resolved in favor of the claimant.

Pursuant to Social Security Rule 85-28:

> "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment."

SSR 85-28 further provides "At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. If this assessment shows the individual to have the physical and mental ability(ies) necessary to perform such activities, no evaluation of past work (or of age, education, work experience) is needed."

The ALJ accepted the impairments as noted above as severe, but did not find that these alleged impairments precluded him from all work.  There is substantial evidence in the record to support the ALJ findings.  The medical evidence, here, did not establish the existence of a severe medically determinable impairment. The ALJ identified all the pertinent medical history supportive of the finding of nonseverity.  Indeed, the ALJ meticulously analyzed the objective medical evidence.  (AR 394-396.)  The ALJ reviewed the medical evidence from the qualified medical examinations in claimant's workers compensation action, Dr. Bronshvag's mild limitations in range of movement, mild findings of the

cervical spine MRI and x-rays of the cervical and lumbar spine.   Thus, the ALJ provided a comprehensive outline of the facts and clinical evidence.   There was no error in the ALJ rejecting the severity of claimant's other impairments.   The ALJ identified all the pertinent medical history supportive of the finding of non-severity. Where the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the commissioner. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999)*; Morgan v. Commissioner,* 169 F.3d 595, 599 (9th Cir. 1999)*.*   Thus, if the record as a whole offers substantial evidence to support the administrative findings, or if there is conflicting evidence that will support the findings, the finding of the Secretary is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## Effects of Obesity and Sleep Apnea

Claimant argues that the ALJ erred in failing to properly assess the affect of obesity and that the ALJ erred in finding the disabling sleep apnea is unsupported by the Record. Claimant argues that there is not substantial evidence that his sleep apnea is under control with the CPAP.

An ALJ must consider obesity in determinations of disability.  *Hammock v. Bowen*, 879 F.2d 498, 503-504 (9th Cir.1989) (en banc).   See also Social Security Ruling 02-01P (discussing the evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p).  SSR 02-01P states, that as the initial step in the sequential evaluation process, "when establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build."  (SSR 02-01P, para. 4.)

While the SSR states that the Social Security Administration will evaluate effects of obesity, it remains claimant's burden to show that obesity has some effect on her functional capacity.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.)  Claimant must come forward with some evidence of how her obesity limits her functioning.  *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

The ALJ found that claimant's obesity was "severe."  (AR 399, Finding no. 3.)  The ALJ

1   considered all of the medical treatment records which recorded claimant's weight.  The ALJ evaluated

2   each of the records: For instance, "the claimant's weight, 309 pounds, was considered a contributing

3   factor [to sleep apnea]; he was referred for a sleep study and advised not to drive." "[C]laimants weight

4   was relatively stable until 2003 . . ." The ALJ considered claimant's complaints of fatigue, but found

5   that the medical evidence showed the CPAP was effective.  (AR 394.)  The ALJ considered the

6   complaints of back and joint pain, but found the objective evidence of mild degenerative changes.  (AR

7   395-396.)

8         All of the physicians who examined claimant considered or recorded claimant's obesity and his

9   complaints of fatigue.  The only physician who limited claimant to sedentary work due to obesity and

10   sleep apnea, Dr. Tevendale, was properly rejected by the ALJ.  The ALJ's decision clearly shows that

11   the ALJ fully considered claimant's obesity and sleep apnea and how it affected his life and functional

12   capacity.  The non-treating state physicians reported that claimant had few physical limitations and

13   specifically found that he could perform light-level work.  Each physician considered what they noted

14   as claimant's "morbid obesity" and sleep apnea in determining his functional capacity.  Thus, there is

15   substantial evidence in the record that the ALJ considered claimant's obesity and sleep apnea and

16   substantial evidence that these conditions were evaluated.

17   **Consideration of Drowsiness and Loss of Concentration**

18         Claimant argues that there is not substantial evidence to support the ALJ's finding that the sleep

19   apnea is under control with the CPAP.

20         The objective evidence shows that claimant had positive good results using his breathing

21   machines. (AR 243, 268-272, 565.)  He testified that he had used the machine for three years (AR

22   593-594, 603), and although some treating records indicate claimant reported the machine was not

23   helpful, his doctors encouraged him to continue using the machines.  (AR 220-221, 541-542.) A logical

24   inference from the evidence before the ALJ is that since claimant continued to use the CPAP, the

25   machines were helpful in reducing claimant's symptoms.  Moreover, none of the examining physicians

26   noted any significant problems with claimant's ability to attend and concentrate, including Dr.

27   Bronshvag.

28         Dr. Barnett was the only physician to assess claimant's cognitive abilities. Dr. Barnett found

claimant's responses in the examination to be "relevant, coherent and organized."  The ALJ properly

discredited the portion of Dr. Barnett's opinion that claimant could not focus attention and concentration

long enough to complete a work day because that opinion conflicted with the evidence in the Record.

(AR 397.)  Thus, there is substantial evidence in the record that the ALJ considered the claim of

drowsiness and loss of concentration.

### Consideration of the VE's Testimony

Claimant argues that the hypothetical questions posed to the VE failed to incorporate all of

claimant's vocational factors of his functional restrictions and failed to adopt the VE testimony matching

the evidence.

At Step Five, it is the Commissioner's burden to establish that jobs exist in the national economy

that the plaintiff can perform. *Osenbrock v. Apfel*, 240 F.3d 1157,  1162 (9th Cir. 2001); 20 C.F.R.

§404.1520(f).  The Commissioner may meet this burden in two different ways: (1) the testimony of a

vocational expert ("VE"), or (2) by reference to the Medical-Vocational Guidelines at 20 CFR Part 404,

subpart P.  *Osenbrock v. Apfel*, 240 F.3d at 1162.

Here, the ALJ employed a vocational expert to opine as to whether claimant could perform any

past relevant work and whether other available jobs exist in the national economy.  Vocational experts

may discuss more specific jobs than the general category of jobs found in the DOT.  *Moncada v. Chater*,

60 F.3d 521, 524 (9th Cir. 1995); *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995) ("vocational

experts can testify whether particular applicants for disability benefits would be able to perform

subcategories of jobs within the DOT.").

The Ninth Circuit has held "[t]he limitation of evidence in a hypothetical question is

objectionable only if the assumed facts could not be supported by the record." *Magallanes v. Bowen*,

881 F.2d 747, 757 (9th Cir.1989) (quotations omitted). The parameters of an ALJ's hypotheticals need

not "include any alleged impairments that the ALJ has rejected as untrue." *Long v. Chater*, 108 F.3d

185, 188 (8th Cir. 1997).  An ALJ may properly "limit a hypothetical to those impairments that are

supported by substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir.

2001).  An ALJ may accept or reject restrictions in a hypothetical question and which are not supported

by substantial evidence, even when there is conflicting medical evidence. *Osenbrock*, 240 F.3d at 1165;

1   *see Magallanes v. Bowen*, 881 F.2d 747, 756-757 (9th Cir. 1989).

2       As discussed above, the ALJ properly rejected the more restricted physicial limitations and

3   mental limitations. The ALJ need not include limitations in the hypotheticals which he has rejected.

4   Since the ALJ did not accept the limitations which he properly rejected, the ALJ was not required to rely

5   on such matter in his hypotheticals to the VE or to rely on the VE's conclusion as to such limitations.

6   The Court finds no error.

7                                      **CONCLUSION**

8       The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by

9   substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this

10  Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social

11  Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant

12  Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Richard Felix.

13  IT IS SO ORDERED.

14  **Dated:    September 14, 2006            /s/ Lawrence J. O'Neill**
    b9ed48                          UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28